**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-04510-5-JNC |
| THE LITTLE MINT, INC. ) | |
| ) | Chapter 11 |
| Debtor. ) | |

**DEBTOR'S EMERGENCY MOTION FOR AUTHORIZATION TO**
**USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 and § 506(c)**

NOW COMES The Little Mint, Inc. (the "Debtor"), by and through its undersigned counsel, and respectfully moves this Court for an Order authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363 and § 506(c).

Pursuant to Bankruptcy Rule 4001(b)(1)(B), the Debtor sets forth the following introductory statement:

1. The Little Mint, Inc. (the "Debtor") is a North Carolina corporation, founded in 1991 and headquartered in Mount Olive, North Carolina, that operates a fast casual restaurant chain known as "Hwy 55 Burger Shakes & Fries". In addition to its corporate office, the Debtor currently has 93 locations, consisting of 22 corporate-owned stores and 71 franchised stores. Prior to filing, the Debtor closed 13 corporate-owned stores. The stores are located primarily throughout the Southeast, with operations in North Carolina, South Carolina, Georgia, Florida, Tennessee and Texas.

2. The Debtor is currently anticipating a continuation of operations by way of this proposed reorganization.

3. The Debtor believes and represents that in order to maximize the value of its assets, the Debtor will be required to incur certain operating expenses.

4. The Debtor's only significant source of income is through continued operations and

1

the cash proceeds generated thereby. It appears that certain proceeds generated from the Debtor's continuing operations may constitute cash collateral of the U.S. Small Business Administration (the "SBA"), Johnson Breeders, Inc. ("Johnson Breeders"), Corporation Service Company ("CSC"), Institution Food House, Inc. ("Institution Food"), and Performance Food Group, Inc. ("Performance Food") (collectively, the "Secured Parties") within the meaning of § 363 of the Bankruptcy Code. Each of the Secured Parties appears to assert a security interest in, among other things, the Debtor's inventory, accounts receivable, payment intangibles, payment card receipts, and/or general intangibles, and proceeds thereof. The asserted liens of Secured Parties may be perfected with respect to the Debtor's proceeds from inventory and credit card payment intangibles existing as of the Petition Date, as well as post-petition proceeds derived from inventory existing as of the Petition Date.

5. Navitas Credit Corp. ("Navitas") filed a UCC-1 financing statement against the Debtor on January 28, 2022. However, its UCC only covers collateral located at or generated by the Debtor's business location in Muscle Shoals, Alabama. The Debtor's Muscle Shoals location is closed and Navitas is therefore unsecured. The Debtor will object to any secured claim filed by Navitas. Nonetheless, the Debtor identifies such creditor in this motion out of an abundance of caution.

6. North Mill Credit Trust ("North Mill") filed a UCC against the Debtor on May 31, 2023 purporting to cover all assets of the Debtor. However, the Equipment Finance Agreement between the Debtor and North Mill only grants a security interest certain equipment located at the Debtor's business location in Kingsland, Georgia. The Debtor's Kingsland location is closed and North Mill is therefore unsecured. The Debtor will object to any secured claim filed by North Mill. Nonetheless, the Debtor identifies such creditor in this motion out of an abundance of

caution.

7. The Debtor proposes that the Secured Parties should be allowed, as adequate protection for the Debtor's use of cash collateral, a post-petition replacement lien and security interest on the same assets to which their liens attached pre-petition, to the same extent and amounts and with the same validity and priority as existed on the Petition Date.

In support of this Motion, the Debtor shows unto this Court the following:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and has statutory and constitutional authority to hear and determine and to issue final rulings in this constitutionally core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code on December 31, 2024 (the "Petition Date"), and currently operates as a debtor-in-possession.

3. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested in this Motion are set forth in the *Affidavit of Kenneth Moore in Support of Debtor's Chapter 11 Filings and First-Day Motions*.

4. The Little Mint, Inc. (the "Debtor") is a North Carolina corporation, founded in 1991 and headquartered in Mount Olive, North Carolina, that operates a fast casual restaurant chain known as "Hwy 55 Burger Shakes & Fries". In addition to its corporate office, the Debtor currently has 93 locations, consisting of 22 corporate-owned stores and 71 franchised stores. Prior to filing, the Debtor closed 13 corporate-owned stores. The stores are located primarily throughout the Southeast, with operations in North Carolina, South Carolina, Georgia, Florida, Tennessee and Texas.

5. The SBA filed a UCC-1 financing statement against Dylan James Management, Inc. ("Dylan James") with the North Carolina Secretary of State on February 23, 2022, bearing File No. 20220023693M, in connection with a $500,000.00 EIDL loan dated February 9, 2022. Dylan James merged with and into the Debtor on July 27, 2023. As of the Petition Date, the outstanding balance owed to the SBA on this loan is believed to be approximately $543,638.36.

6. The SBA filed a UCC-1 financing statement against Moon Unit, Inc. ("Moon Unit") with the North Carolina Secretary of State on February 24, 2022, bearing File No. 20220024378A, in connection with a $500,000.00 EIDL loan dated February 10, 2022. Moon Unit merged with and into the Debtor on July 27, 2023. As of the Petition Date, the outstanding balance owed to the SBA on this loan is believed to be approximately $543,638.36.

7. Johnson Breeders filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on March 19, 2024, bearing File No. 20240032607H. As of the Petition Date, the outstanding balance owed to Johnson Breeders is believed to be approximately $4,068,750.00. Upon information and belief, Johnson Breeders is unsecured as to cash collateral.

8. CSC filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on May 15, 2024, bearing File No. 20240059501K. It is unclear which creditor filed this financing statement. Upon information and belief, the creditor represented by this financing statement is unsecured as to cash collateral.

9. Institution Food filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on June 27, 2024, bearing File No. 20240078499G. As of the Petition Date, the outstanding balance owed to Institution Food is believed to be approximately $0. Upon information and belief, Institution Food is unsecured as to cash collateral.

10. Performance Food filed a UCC-1 financing statement against the Debtor with the North Carolina Secretary of State on July 9, 2024, bearing File No. 20240082577J. As of the Petition Date, the outstanding balance owed to Performance Food is believed to be approximately $1,013,172.61. Upon information and belief, Performance Food is unsecured as to cash collateral.

11. It appears that the Debtor may have granted to the Secured Parties a security interest in, among other things, the Debtor's inventory, accounts receivable, and general intangibles, including payment intangibles, as well as proceeds thereof (the "Collateral").

12. It appears that the Collateral generated from operations on a prepetition basis, as well as post-petition proceeds generated from the sale of pre-petition inventory, may constitute cash collateral of the Secured Parties within the meaning of § 363 of the Bankruptcy Code.

13. The Secured Parties' claims have not been scheduled as disputed, unliquidated, or contingent, and the Debtor believes the liens and security interests described above are valid, properly perfected, and not subject to avoidance; provided, however, the Debtor reserves for itself, the Bankruptcy Administrator, any official committee of unsecured creditors subsequently created (the "Committee"), any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, or any other party in interest any and all rights to challenge, avoid, object to, set aside, or subordinate any claims, liens, security interests, or rights of setoff against the Debtor's property, or the proceeds, profits, and income generated therefrom.

14. The Debtor is currently anticipating a continuation of operations by way of this proposed reorganization. The Debtor believes and represents that in order to maintain existing operations and maximize the value of its assets, the Debtor will be required to incur certain operating expenses. The Debtor's only significant source of income is through continued operations and the cash proceeds generated thereby. As a result, the Debtor respectfully requests

5

a preliminary hearing on this Motion in order to avoid a cessation of operations and irreparable harm to the Estate.

15. The Debtor will require necessary funds for operating its business and other expenses. The Debtor will provide a budget specifying these expenses. The Debtor's budget will separate cash collateral and non-collateral receipts for the benefit of the Court and parties in interest.

16. The Debtor will maintain one or more Debtor-in-Possession ("DIP") bank accounts, into which it will deposit all cash, checks and other cash items. The Debtor will segregate its cash collateral and non-cash collateral income sources.

17. The Debtor believes and represents that a reorganization and continuation of its operations will generate the greatest source of funds for creditors, including the Secured Parties. The Debtor will require access to the cash collateral on hand and generated by its continued operations in order to allow it to remain in business.

18. Furthermore, if the use of cash collateral is not immediately approved, the Estate may suffer immediate and irreparable harm, in that it will not be able to pay its expenses from funds generated by operations. If the Debtor is unable to maintain constant cash flow, it cannot succeed in bankruptcy. Rule 4001(b)(2) of the Bankruptcy Rules reads as follows:

> (2) Hearing. The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such fourteen (14) day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

19. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests a preliminary hearing authorizing it to use cash collateral as specified in this Motion.

20. The Debtor proposes that the Secured Parties should be allowed, as adequate protection for the Debtor's use of the cash collateral, post-petition replacement liens on the

Collateral securing their respective indebtedness with the same validity, priority, and enforceability as the Secured Parties had against the Collateral as of the Petition Date.

21. The Debtor asserts that the requirements of the Bankruptcy Rules and the Bankruptcy Code, including without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's use of cash collateral and for the grant of adequate protection to the Secured Parties upon the terms set forth herein.

22. An order substantially in the form attached hereto as Exhibit A (the "Interim Order") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of the Secured Parties as (i) the Secured Parties would continue to maintain their existing liens on all their existing and on replacement collateral as set forth herein, and (ii) the use of cash collateral would preserve the value of the estate for the benefit of the Secured Creditors and all other creditors.

23. The Debtor asserts that the terms, conditions, and limitations of the proposed Interim Order are reasonably tailored to protect the interests of all creditors of the bankruptcy estate.

24. The Debtor seeks authority to use cash collateral through and including (i) the effective date of a confirmed plan of reorganization, (ii) a sale of substantially all assets of the estate, or (iii) conversion of the case to Chapter 7, whichever may first occur.

25. The Debtor proposes that in the event the Secured Parties, or any of them, has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or seeks adequate protection in the future in addition to that provide herein, then said creditor may, upon no less than three (3) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee (or if no committee

7

has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules), and (iv) the Bankruptcy Administrator and opportunity to cure, on an expedited basis:

    a.    Seek an order from this Court restraining such payments or usage as not being in conformity with this Motion; or

    b.    Seek an order terminating further authority to use cash collateral altogether.

26.    While the Debtor seeks the consent of the Secured Parties to the use of cash collateral on an interim basis and for the purposes set forth in this Motion, in the absence of such consent the Debtor asks the Court to authorize such use and to provide adequate protection to the Secured Creditors to the extent the use of cash collateral impairs such creditors' interests, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

WHEREFORE, the Debtor respectfully prays for the following relief:

1.    For a preliminary hearing on this Motion in order that immediate harm to the Estate can be avoided on January 7, 2025 at 11:00a.m. in Greenville, North Carolina.;

2.    For leave of the Court to pay necessary expenses utilizing current cash collateral generated by the above-described operations;

3.    For an Order authorizing the Debtor's use of cash collateral in accordance with 11 U.S.C. §§ 363 and 506(c) in the form attached hereto as **Exhibit A**;

4.    For the Court to schedule a further hearing to be held regarding this Motion, the Interim Order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure; and

5.    For such other and further relief that the Court deems just and appropriate.

DATED: December 31, 2024

**HENDREN, REDWINE & MALONE, PLLC**

s/Jason L. Hendren
Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Stoney (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone:  (919) 573-1422
Facsimile:   (919) 420-0475
Email: jhendren@hendrenmalone.com
           rredwine@hendrenmalone.com
           bwaller@hendrenmalone.com
           lstoney@hendrenmalone.com
*Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 24-04510-5-JNC |
| **THE LITTLE MINT, INC.** ) | |
| ) | **Chapter 11** |
| Debtor. ) | |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN of the **DEBTOR'S EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND § 506(c)** (the "Motion") filed simultaneously herewith in the above captioned case; and,

FURTHER NOTICE IS HEREBY GIVEN that the Motion may be allowed provided no responses and request for a hearing is made by a party in interest in writing to the Clerk of this Court by **Monday, January 6, 2025 by 5:00 p.m.**; and,

FURTHER NOTICE IS HEREBY GIVEN, that if a response and a request for a hearing is filed by a party in interest in writing within the time indicated, a hearing will be conducted on the Motion and response thereto on **Tuesday, January 7, 2025 at 11:00 a.m. at the United States Bankruptcy Court in Greenville, North Carolina**. Any party requesting a hearing shall appear at said hearing in support of such request or he may be assessed Court costs. If no request for a hearing is timely filed, the Court may rule on the Motion and response thereto *ex parte* without further notice.

DATE: December 31, 2024          **HENDREN, REDWINE & MALONE, PLLC**

s/Jason L. Hendren
Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Stoney (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
         rredwine@hendrenmalone.com
         bwaller@hendrenmalone.com
         lstoney@hendrenmalone.com
*Counsel for the Debtor*

10

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 24-04510-5-JNC** |
| **THE LITTLE MINT, INC.** | ) | |
| | ) | **Chapter 11** |
| Debtor. | ) | |

**FIRST INTERIM ORDER AUTHORIZING
DEBTOR'S USE OF CASH COLLATERAL**

THIS CAUSE came on for hearing before the Court on January 7, 2025 upon the Debtor's Emergency Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and § 506(c) (the "Motion") filed by the Debtor on December 31, 2024. It appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and should be approved. It further appears to the Court that the notice of the Motion that the Debtor provided to creditors and parties in interest is adequate and proper.

THEREFORE, based upon the Motion, the arguments of counsel, testimony of the Debtor, and the record in this case, the Court hereby makes the following FINDINGS OF FACT and

CONCLUSIONS OF LAW:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and has statutory and constitutional authority to hear and determine and to issue final rulings in this constitutionally core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code on December 31, 2024 (the "Petition Date"), and currently operates as a debtor-in-possession.

3. The Little Mint, Inc. (the "Debtor") is a North Carolina corporation, founded in 1991 and headquartered in Mount Olive, North Carolina, that operates a fast casual restaurant chain known as "Hwy 55 Burger Shakes & Fries". In addition to its corporate office, the Debtor currently has 93 locations, consisting of 22 corporate-owned stores and 71 franchised stores. Prior to filing, the Debtor closed 13 corporate-owned stores. The stores are located primarily throughout the Southeast, with operations in North Carolina, South Carolina, Georgia, Florida, Tennessee and Texas.

4. The Debtor's only significant source of income is through continued operations and the cash proceeds generated thereby. It appears that certain proceeds generated from the Debtor's continuing operations may constitute cash collateral of the U.S. Small Business Administration (the "SBA"), Johnson Breeders, Inc. ("Johnson Breeders"), Corporation Service Company ("CSC"), Institution Food House, Inc. ("Institution Food"), and Performance Food Group, Inc. ("Performance Food") (collectively, the "Secured Parties") within the meaning of § 363 of the Bankruptcy Code. Each of the Secured Parties appears to assert a security interest in, among other things, the Debtor's inventory, accounts receivable, payment intangibles, payment card receipts,

and/or general intangibles, and proceeds thereof. The asserted liens of Secured Parties may be perfected with respect to the Debtor's proceeds from inventory and credit card payment intangibles existing as of the Petition Date, as well as post-petition proceeds derived from inventory existing as of the Petition Date

5. Navitas Credit Corp. ("Navitas") appears to assert a security interest in certain of the Debtor's collateral located at or generated by the Debtor's business location in Muscle Shoals, Alabama. However, the Debtor's Muscle Shoals location is closed. Similarly, North Mill Credit Trust ("North Mill") filed a UCC against the Debtor on May 31, 2023 purporting to cover all assets of the Debtor. However, the Equipment Finance Agreement between the Debtor and North Mill only grants a security interest certain equipment located at the Debtor's business location in Kingsland, Georgia. The Debtor's Kingsland location is also closed. The Debtor believes that the debts to Navitas and North Mill are unsecured. Nonetheless, the Debtor identifies such creditors in its Motion out of an abundance of caution.

6. It appears that the Debtor may have granted to the Secured Parties a security interest in, among other things, the Debtor's inventory, accounts receivable, and general intangibles, including payment intangibles, as well as proceeds thereof (the "Collateral").

7. It appears that the Collateral generated from operations on a prepetition basis, as well as post-petition proceeds generated from the sale of pre-petition inventory, may constitute cash collateral of the Secured Parties within the meaning of § 363 of the Bankruptcy Code.

8. The Debtor is currently anticipating a continuation of operations by way of this proposed reorganization. The Debtor believes and represents that in order to maintain existing operations and maximize the value of its assets, the Debtor will be required to incur certain operating expenses. The Debtor's only significant source of income is through continued

operations and the cash proceeds generated thereby.

9. The Debtor will maintain one or more Debtor-in-Possession ("DIP") bank accounts, into which it will deposit all cash, checks and other cash items. The Debtor will segregate its cash collateral and non-cash collateral income sources.

10. The Debtor represents that a reorganization and continuation of its operations will generate the greatest source of funds for creditors, including the Secured Parties. The Debtor will require access to the cash collateral on hand and generated by its continued operations in order to allow it to remain in business.

11. For the purposes of this Interim Order, the Debtor acknowledges and does not dispute the validity, priority, and enforceability of the liens asserted by the Secured Parties or the amounts due to the Secured Parties under their respective loan documents; provided, however, that neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interest(s) and lien(s) held by the Secured Parties in addition to the amounts due to the Secured Parties.

12. The Debtor proposes that the Secured Parties should be allowed, as adequate protection for the Debtor's use of the cash collateral, post-petition replacement liens on the Collateral securing their respective indebtedness with the same validity, priority, and enforceability as the Secured Parties had against the Collateral as of the Petition Date. The Debtor asserts that the terms, conditions, and limitations of this Order are reasonably tailored to protect the interests of all creditors of the bankruptcy estate.

13. The Court finds, on an interim basis, that the requirements of the Bankruptcy Rules and the Bankruptcy Code, including without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's use of cash collateral and for the grant of adequate protection to the

Secured Parties upon the terms set forth in this Interim Order.

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby ORDERS:

1. The Secures Parties' liens on the Collateral securing their indebtedness shall extend to the Debtor's post-petition assets to the extent and amount that they are secured as of the Petition Date; provided, however, that nothing in this Interim Order shall be deemed to grant any of the Secured Parties a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien(s).  The post-petition liens and security interests provided for herein shall survive the term of this Interim Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the Petition Date.  The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including other creditors), the right to challenge the validity and priority of the pre-petition liens of the Secured Parties and, derivatively, the post-petition liens provided for hereunder.  Until such time as any such lien is determined to be invalid by future Order of this Court, the Debtor acknowledges and agrees to the validity of the Secured Parties' liens and related loan documentation (collectively referred to hereinafter as the "Pre-petition Loan Documents").

2. The replacement lien granted to the Secured Parties pursuant to this Interim Order shall be subject to and subordinate to a carve-out for the payment of allowed professional fees and disbursements incurred by Court approved professionals ("Carve Out").  So long as the Debtor has the right to use Cash Collateral pursuant to this Interim Order, professionals for the Debtor, if any, may be paid from Cash Collateral pursuant to the Budget and procedures approved by the Court. To the extent such professional fees are approved by the Court and paid pursuant to this Interim Order, they shall be free and clear of the liens of the Secured Parties.

3. The Debtor shall be authorized to use cash collateral for its post-petition, necessary and reasonable operating expenses in accordance with the budget attached as Exhibit "A" and subject to the terms of this Interim Order. Any expenditure in excess of ten percent (10%) of the budgeted amounts shall require the prior written consent of the Secured Parties before being paid.

4. The Debtor shall deposit all cash, checks, and other cash items received from the operation of the business encumbered by the asserted lien in favor of the Secured Parties into its Debtor-in-Possession ("DIP") Operating bank account. The Debtor shall make disbursements for items designated in the budget from such account. The Debtor shall segregate its cash collateral and non-cash collateral income sources.

5. The Debtor reserves the right to file an additional motion for authority to use cash collateral and to seek an expedited hearing thereon; provided, however, that such hearing shall not occur on less than three business days' notice to the Secured Parties.

6. On or before the respective dates set forth below, the Debtor shall deliver to the Secured Parties the following financial information and business data:

   a. <u>Pleadings</u>. The Debtor shall serve upon the Secured Parties a copy of any pleading it files in this case.

   b. <u>Access to Collateral</u>. Upon reasonable prior notice, the Debtor shall provide to representatives and/or employees of the Secured Parties all such information as it may reasonably request for the purpose of evaluating its collateral, if any.

   c. <u>Reports</u>. The Debtor shall serve a copy of the monthly report required by Rule 4002 on the Secured Parties.

These obligations of the Debtor are continuing in nature, shall survive the term of this Interim Order, and shall remain in effect until the earlier of (a) the effective date of any confirmed

Chapter 11 plan in this proceeding, (b) a sale of substantially all assets of the estate, (c) conversion of this case to another Chapter of the Bankruptcy Code, or (d) dismissal of this proceeding.

7. This Interim Order shall remain in full force and effect until the earlier of (a) February ___, 2025; (b) the entry of an Order by the Court terminating this Interim Order for cause, including but not limited to breach of the terms and conditions of this Interim Order; or (c) upon filing of a notice of default as provided in this Interim Order.

8. All authority to use cash collateral as set forth herein shall expire as to any collateral that is the subject of an Order granting stay relief under Section 362 of the Bankruptcy Code. Also, such authority shall expire on mutual written agreement of the parties.

9. It shall be a default hereunder for any one or more of the following to occur:

   a. the Debtor shall fail to comply with any of the terms or conditions of this Interim Order; or

   b. failure to file a Plan in accordance with Orders of this Court.

10. Upon the filing with the Court by the Secured Parties of a written notice of any such default (which shall be served upon the Debtor by telefax and United States mail, and shall be served upon the Bankruptcy Administrator by electronic mail and United States mail), the Debtor may request a hearing to challenge the declaration of default hereunder. The parties shall have the right to seek an expedited hearing on any challenge by the Debtor; provided, however, that such hearing shall not occur on less than three (3) business days' notice to the other party.

11. Nothing herein shall be deemed to alter or affect the Secured Parties' liens and such liens shall remain in full force and effect pursuant to the terms of the Secured Parties' loan documents and 11 U.S.C. § 552(b).

12. The Debtor shall not dispose of any asset out of the ordinary course of its business

without the advance written consent of the Secured Parties and, as necessary, the approval of this Court.

13. The terms and conditions of this Interim Order do not necessarily constitute adequate protection of the interests of the Secured Parties in cash collateral. The Debtor expressly reserves its right to seek additional use of cash collateral beyond the stated term of this Interim Order. Any party may seek further consideration of the relief granted in this Interim Order or other cash collateral issues by filing a request with the Court; provided, however, that a hearing on any such request shall not occur on less than three (3) business days' notice to the Secured Parties, the Bankruptcy Administrator, and the Debtor. Nothing in this Interim Order shall waive any rights of the creditors unless expressly provided for herein.

14. If any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Interim Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding. This Interim Order shall be binding upon and inure to the benefit of the Debtor. The terms and provisions of this Interim Order shall bind any trustee appointed for the Debtor's estate under any provision of the Bankruptcy Code. This binding effect is an integral part of this Interim Order.

15. The Debtor shall serve notice of this Interim Order on all parties entitled to receive the same pursuant to Bankruptcy Rules 1007 and 4001.

16. Any party may object to the use of cash collateral by January \_\_\_, 2025. If no objections are filed, the Court may approve a further interim cash collateral order and operating budget without a hearing.

17. The Debtor shall file its January operating budget with the Court no later than January \_\_\_, 2025.

18. Further hearing on this matter shall be heard at the United States Bankruptcy Court, in Greenville, North Carolina at \_\_\_\_\_ a.m. on February \_\_, 2025.

**END OF DOCUMENT**