IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-04510-5-JNC |
| THE LITTLE MINT, INC. | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

## NOTICE OF PROPOSED INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL

The Debtor, through its undersigned counsel, hereby files this notice and attaches as Exhibit "A" the proposed order for Debtor's Emergency Motion for Authorization to Use Cash Collateral [DE# 9].

DATED: January 6, 2025

                                       **HENDREN, REDWINE & MALONE, PLLC**

                                       s/Rebecca F. Redwine
                                       Jason L. Hendren (NC State Bar No. 26869)
                                       Rebecca F. Redwine (NC State Bar No. 37012)
                                       Benjamin E.F.B. Waller (NC State Bar No. 27680)
                                       Lydia C. Stoney (NC State Bar No. 56697
                                       4600 Marriott Drive, Suite 150
                                       Raleigh, NC 27612
                                       Telephone: (919) 573-1422
                                       Facsimile:   (919) 420-0475
                                       Email: jhendren@hendrenmalone.com
                                                                         rredwine@hendrenmalone.com
                                                                         bwaller@hendrenmalone.com
                                                                         lstoney@hendrenmalone.com
                                       *Counsel for the Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 24-04510-5-JNC |
| THE LITTLE MINT, INC. | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

## FIRST INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL

THIS CAUSE came on for hearing before the Court on January 7, 2025 upon the Debtor's Emergency Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and § 506(c) (the "Motion") filed by the Debtor on December 31, 2024. It appears to the Court that the terms and conditions set forth below are reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and should be approved. It further appears to the Court that the notice of the Motion that the Debtor provided to creditors and parties in interest is adequate and proper.

THEREFORE, based upon the Motion, the arguments of counsel, testimony of the Debtor, and the record in this case, the Court hereby makes the following FINDINGS OF FACT and

CONCLUSIONS OF LAW:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and has statutory and constitutional authority to hear and determine and to issue final rulings in this constitutionally core proceeding under 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor filed its voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code on December 31, 2024 (the "Petition Date"), and currently operates as a debtor-in-possession.

3. The Little Mint, Inc. (the "Debtor") is a North Carolina corporation, founded in 1991 and headquartered in Mount Olive, North Carolina, that operates a fast casual restaurant chain known as "Hwy 55 Burger Shakes & Fries". In addition to its corporate office, the Debtor currently has 93 locations, consisting of 22 corporate-owned stores and 71 franchised stores. Prior to filing, the Debtor closed 13 corporate-owned stores. The stores are located primarily throughout the Southeast, with operations in North Carolina, South Carolina, Georgia, Florida, Tennessee and Texas.

4. The Debtor's only significant source of income is through continued operations and the cash proceeds generated thereby. It appears that certain proceeds generated from the Debtor's continuing operations may constitute cash collateral of the U.S. Small Business Administration (the "SBA"), Johnson Breeders, Inc. ("Johnson Breeders"), Corporation Service Company ("CSC"), Institution Food House, Inc. ("Institution Food"), and Performance Food Group, Inc. ("Performance Food") (collectively, the "Secured Parties") within the meaning of § 363 of the Bankruptcy Code. Each of the Secured Parties appears to assert a security interest in, among other things, the Debtor's inventory, accounts receivable, payment intangibles, payment card receipts,

and/or general intangibles, and proceeds thereof. The asserted liens of Secured Parties may be perfected with respect to the Debtor's proceeds from inventory and credit card payment intangibles existing as of the Petition Date, as well as post-petition proceeds derived from inventory existing as of the Petition Date

5. Navitas Credit Corp. ("Navitas") appears to assert a security interest in certain of the Debtor's collateral located at or generated by the Debtor's business location in Muscle Shoals, Alabama. However, the Debtor's Muscle Shoals location is closed. Similarly, North Mill Credit Trust ("North Mill") filed a UCC against the Debtor on May 31, 2023 purporting to cover all assets of the Debtor. However, the Equipment Finance Agreement between the Debtor and North Mill only grants a security interest certain equipment located at the Debtor's business location in Kingsland, Georgia. The Debtor's Kingsland location is also closed. The Debtor believes that the debts to Navitas and North Mill are unsecured. Nonetheless, the Debtor identifies such creditors in its Motion out of an abundance of caution.

6. It appears that the Debtor may have granted to the Secured Parties a security interest in, among other things, the Debtor's inventory, accounts receivable, and general intangibles, including payment intangibles, as well as proceeds thereof (the "Collateral").

7. It appears that the Collateral generated from operations on a prepetition basis, as well as post-petition proceeds generated from the sale of pre-petition inventory, may constitute cash collateral of the Secured Parties within the meaning of § 363 of the Bankruptcy Code.

8. The Debtor is currently anticipating a continuation of operations by way of this proposed reorganization. The Debtor believes and represents that in order to maintain existing operations and maximize the value of its assets, the Debtor will be required to incur certain operating expenses. The Debtor's only significant source of income is through continued

operations and the cash proceeds generated thereby.

9. The Debtor will maintain one or more Debtor-in-Possession ("DIP") bank accounts, into which it will deposit all cash, checks and other cash items. The Debtor will segregate its cash collateral and non-cash collateral income sources.

10. The Debtor represents that a reorganization and continuation of its operations will generate the greatest source of funds for creditors, including the Secured Parties. The Debtor will require access to the cash collateral on hand and generated by its continued operations in order to allow it to remain in business.

11. For the purposes of this Interim Order, the Debtor acknowledges and does not dispute the validity, priority, and enforceability of the liens asserted by the Secured Parties or the amounts due to the Secured Parties under their respective loan documents; provided, however, that neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interest(s) and lien(s) held by the Secured Parties in addition to the amounts due to the Secured Parties.

12. The Debtor proposes that the Secured Parties should be allowed, as adequate protection for the Debtor's use of the cash collateral, post-petition replacement liens on the Collateral securing their respective indebtedness with the same validity, priority, and enforceability as the Secured Parties had against the Collateral as of the Petition Date. The Debtor asserts that the terms, conditions, and limitations of this Order are reasonably tailored to protect the interests of all creditors of the bankruptcy estate.

13. The Court finds, on an interim basis, that the requirements of the Bankruptcy Rules and the Bankruptcy Code, including without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's use of cash collateral and for the grant of adequate protection to the

Secured Parties upon the terms set forth in this Interim Order.

WHEREFORE, based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby ORDERS:

1. The Secures Parties' liens on the Collateral securing their indebtedness shall extend to the Debtor's post-petition assets to the extent and amount that they are secured as of the Petition Date; provided, however, that nothing in this Interim Order shall be deemed to grant any of the Secured Parties a post-petition lien on assets, if any, in which it did not possess a valid, perfected, enforceable, and otherwise non-avoidable pre-petition lien(s). The post-petition liens and security interests provided for herein shall survive the term of this Interim Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the Petition Date. The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including other creditors), the right to challenge the validity and priority of the pre-petition liens of the Secured Parties and, derivatively, the post-petition liens provided for hereunder. Until such time as any such lien is determined to be invalid by future Order of this Court, the Debtor acknowledges and agrees to the validity of the Secured Parties' liens and related loan documentation (collectively referred to hereinafter as the "Pre-petition Loan Documents").

2. The replacement lien granted to the Secured Parties pursuant to this Interim Order shall be subject to and subordinate to a carve-out for the payment of allowed professional fees and disbursements incurred by Court approved professionals ("Carve Out"). So long as the Debtor has the right to use Cash Collateral pursuant to this Interim Order, professionals for the Debtor, if any, may be paid from Cash Collateral pursuant to the Budget and procedures approved by the Court. To the extent such professional fees are approved by the Court and paid pursuant to this Interim Order, they shall be free and clear of the liens of the Secured Parties.

3.   The Debtor shall be authorized to use cash collateral for its post-petition, necessary and reasonable operating expenses in accordance with the budget attached as Exhibit "A" and subject to the terms of this Interim Order. Any expenditure in excess of ten percent (10%) of the budgeted amounts shall require the prior written consent of the Secured Parties before being paid.

4.   The Debtor shall deposit all cash, checks, and other cash items received from the operation of the business encumbered by the asserted lien in favor of the Secured Parties into its Debtor-in-Possession ("DIP") Operating bank account. The Debtor shall make disbursements for items designated in the budget from such account. The Debtor shall segregate its cash collateral and non-cash collateral income sources.

5.   The Debtor reserves the right to file an additional motion for authority to use cash collateral and to seek an expedited hearing thereon; provided, however, that such hearing shall not occur on less than three business days' notice to the Secured Parties.

6.   On or before the respective dates set forth below, the Debtor shall deliver to the Secured Parties the following financial information and business data:

   a.   <u>Pleadings</u>. The Debtor shall serve upon the Secured Parties a copy of any pleading it files in this case.

   b.   <u>Access to Collateral</u>. Upon reasonable prior notice, the Debtor shall provide to representatives and/or employees of the Secured Parties all such information as it may reasonably request for the purpose of evaluating its collateral, if any.

   c.   <u>Reports</u>. The Debtor shall serve a copy of the monthly report required by Rule 4002 on the Secured Parties.

These obligations of the Debtor are continuing in nature, shall survive the term of this Interim Order, and shall remain in effect until the earlier of (a) the effective date of any confirmed

Chapter 11 plan in this proceeding, (b) a sale of substantially all assets of the estate, (c) conversion of this case to another Chapter of the Bankruptcy Code, or (d) dismissal of this proceeding.

7. This Interim Order shall remain in full force and effect until the earlier of (a) February ___, 2025; (b) the entry of an Order by the Court terminating this Interim Order for cause, including but not limited to breach of the terms and conditions of this Interim Order; or (c) upon filing of a notice of default as provided in this Interim Order.

8. All authority to use cash collateral as set forth herein shall expire as to any collateral that is the subject of an Order granting stay relief under Section 362 of the Bankruptcy Code. Also, such authority shall expire on mutual written agreement of the parties.

9. It shall be a default hereunder for any one or more of the following to occur:

   a. the Debtor shall fail to comply with any of the terms or conditions of this Interim Order; or

   b. failure to file a Plan in accordance with Orders of this Court.

10. Upon the filing with the Court by the Secured Parties of a written notice of any such default (which shall be served upon the Debtor by telefax and United States mail, and shall be served upon the Bankruptcy Administrator by electronic mail and United States mail), the Debtor may request a hearing to challenge the declaration of default hereunder. The parties shall have the right to seek an expedited hearing on any challenge by the Debtor; provided, however, that such hearing shall not occur on less than three (3) business days' notice to the other party.

11. Nothing herein shall be deemed to alter or affect the Secured Parties' liens and such liens shall remain in full force and effect pursuant to the terms of the Secured Parties' loan documents and 11 U.S.C. § 552(b).

12. The Debtor shall not dispose of any asset out of the ordinary course of its business

without the advance written consent of the Secured Parties and, as necessary, the approval of this Court.

13. The terms and conditions of this Interim Order do not necessarily constitute adequate protection of the interests of the Secured Parties in cash collateral. The Debtor expressly reserves its right to seek additional use of cash collateral beyond the stated term of this Interim Order. Any party may seek further consideration of the relief granted in this Interim Order or other cash collateral issues by filing a request with the Court; provided, however, that a hearing on any such request shall not occur on less than three (3) business days' notice to the Secured Parties, the Bankruptcy Administrator, and the Debtor. Nothing in this Interim Order shall waive any rights of the creditors unless expressly provided for herein.

14. If any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Interim Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding. This Interim Order shall be binding upon and inure to the benefit of the Debtor. The terms and provisions of this Interim Order shall bind any trustee appointed for the Debtor's estate under any provision of the Bankruptcy Code. This binding effect is an integral part of this Interim Order.

15. The Debtor shall serve notice of this Interim Order on all parties entitled to receive the same pursuant to Bankruptcy Rules 1007 and 4001.

16. Any party may object to the use of cash collateral by January ___, 2025. If no objections are filed, the Court may approve a further interim cash collateral order and operating budget without a hearing.

17. The Debtor shall file its January operating budget with the Court no later than January ___, 2025.

18. Further hearing on this matter shall be heard at the United States Bankruptcy Court, in Greenville, North Carolina at _____ a.m. on February __, 2025.

**END OF DOCUMENT**



| | | | | | | |
|---|---|---|---|---|---|---|
| INCOME | | $1,424,700.00 | | | | |
| | | | | | | |
| FOOD | | | | % | | |
| SYSCO, CO2, OTHER FOOD/SUPPLIES | | $393,645.00 | | 27.63% | | |
| | TOTAL | $393,645.00 | | 27.63% | | |
| | | | | | | |
| LABOR | | | | % | | |
| WAGES, TAXES, WC | | $365,928.00 | | 25.68% | | |
| | TOTAL | $365,928.00 | | 25.68% | | |
| | | | | | | |
| EXPENSES | | | % | | | % |
| RENT | | $239,316.14 | 16.80% | STORE INS. | $18,500.00 | 1.30% |
| MOVING EXPENSES | | $10,000.00 | 0.70% | WORK COMP | $6,000.00 | 0.42% |
| REGISTER SOFTWARE | | $8,358.00 | 0.59% | OMNI | $20,000.00 | 1.40% |
| MUSIC | | $489.00 | 0.03% | LAWN MAINTENANCE | $4,420.00 | 0.31% |
| UTILITY ADEQUATE ASSURANCE | | $57,720.40 | 4.05% | STORE/EQUIP REPAIR | $5,000.00 | 0.35% |
| CC PROCESSING | | $16,175.00 | 1.14% | TRASH/GREASE | $11,053.79 | 0.78% |
| JANITORIAL | | $2,500.00 | 0.18% | ACCOUNTING | $15,000.00 | 1.05% |
| POSTAGE | | $500.00 | 0.04% | MAINTENANCE | $10,800.00 | 0.76% |
| BANK/SAFE CHARGES | | $16,185.00 | 1.14% | OFFICE SUPPLIES/EXPENSES | $3,000.00 | 0.21% |
| | | | 0.00% | STORE SUPPLIES | $3,600.00 | 0.25% |
| | | | 0.00% | | | |
| | | | 0.00% | LINEN | $1,900.00 | 0.13% |
| ADVERTISING | | $1,940.00 | 0.14% | SECURITY | $3,000.00 | 0.21% |
| ONLINE ORDERING FEES | | $1,650.00 | 0.12% | PrimePay PAYROLL PROCESSOR | $6,000.00 | 0.42% |
| PEST CONTROL | | $2,075.00 | 0.15% | UNIFORMS | $6,000.00 | 0.42% |
| TRAVEL EXPENSES | | $5,000.00 | 0.35% | PATRONIX GIFT CARD FEES | $3,000.00 | 0.21% |
| COMMUNICATION SOFTWARE | | $3,000.00 | 0.21% | PROFESSIONAL EXPENSES | $5,000.00 | 0.35% |
| TOTAL BILLS | | $519,182.33 | 36.44% | EMPLOYEE INSURANCE | $32,000.00 | 2.25% |
| OVER/SHORT | | -$1,720.00 | -0.12% | | | |
| | | | | | | |
| TOTAL PROFIT: | | **$144,224.67** | 10.12% | | | |